As indicated by the clerk, the first case is People v. VanHoose, case number 5-170247. We'll hear first from the appellant, Mr. Whitney. Good morning, your honors. May it please the court, counsel. Richard Whitney for defendant appellant Bradley VanHoose. Your honors, this case can and should be readily resolved simply by applying first-year law school black letter law or reading the statute on the definition of assault. In a case in which the state's own chief alleged victim witness testified that an imminent battery was not possible because Mr. VanHoose was physically too far away from him, and in which neither of the state's eyewitnesses testified that Mr. VanHoose made a single gesture or physical movement indicating that a battery was imminent, no reasonable fact finder can possibly conclude that an assault occurred, let alone that it occurred beyond a reasonable doubt. Mr. Whitney, let me ask you a question, please. Sure. The defendant was given supervision, correct? Yes. And he has completed that supervision and the case has been dismissed, correct? Correct. So how can we give you relief here? A judgment of acquittal would be different as far as public records are concerned than a judgment indicating that there was court supervision, even though it was completed. Court supervision does create a kind of legal fiction that you were never convicted because you completed the court supervision. We all know this. But it's still not the same thing as an actual judgment of acquittal. And the reality is, I think we can take judicial notice of the fact that on the Internet, nothing ever dies, right? In other words, Mr. VanHoose, in seeking employment, for example, and in fact, this is not in the record, but let's assume that something like this has happened, employers can find this. They will see on the record that a judgment of guilt was entered and that he completed supervision. It's still a matter of public record. Employers can still find it. There is still injury here. There is injury, in fact, to Mr. VanHoose. And that is why he continues to fight for an actual judgment of acquittal in this case. Okay. I'm going to ask you the same question on that issue, Mr. Bailey, too, when your time comes. So you may proceed, Mr. Whitney. Yes. Thank you, Your Honor. So, again, the basics of assault were simply not met in this case. Accordingly, I would emphasize that this is that rare case in which the facts and the law require entry of a judgment of acquittal from the court. And I don't believe that this court will find it necessary to address our second issue, namely that the circuit court failed to advise Mr. VanHoose of his right to the assistance of court-appointed counsel for post-trial proceedings. Your Honors, to find a defendant guilty of assault requires proof of threatening conduct as well as threatening words that creates an objectively reasonable apprehension of an imminent battery. None of these elements were met here. The only thing, the only element that was met here was simply that some threatening words to, according to the state's witnesses, to kill someone at some indefinite future time were uttered by Mr. VanHoose. But there was absolutely no conduct here. The only thing that even remotely comes close is that he had a motorcycle. But there was no evidence that he ever turned on the motorcycle and aimed it at either of these witnesses, that he drove it toward them. Instead, the chief alleged victim witness here, Leonard Black, himself testified that Mr. VanHoose remained a safe distance, and that's an exact quote, a safe distance where, quote, where nothing, quote, could happen right there. Was there some testimony that the defendant came flying up with his motorcycle? As I recall, how do you respond to that testimony? Your Honor, at one point, witness Black did say he came flying up the hill. He never said that he came flying up the hill toward me, or he drove his motorcycle toward me, or anything of that nature. Additionally, the other chief eyewitness, Mr. Romanek, said that he was walking his motorcycle up the hill, and he didn't start his motorcycle until after the threatening words were uttered. So, no one can accuse these witnesses of being overly rehearsed, but the fact of the matter is, is you have this contradiction in the testimony, but neither of them ever said that Mr. VanHoose ever directly approached them and came within close proximity. Neither of the witnesses ever said anything to contradict Leonard Black's testimony, the alleged victim, that he stayed at least 15 to 20 feet away during the entire interchange of words. Accordingly, for these reasons, it's very clear that these elements were not met. In addition, I might mention that although I know the state argued in its brief, well, he said, I'll kill you, and that's an imminent threat. First of all, I think English language, just ordinary common usage of the English language saying, I will kill you, or, you know, I'm going to kill you, is describing something in an indefinite future tense. Right? It's not something that describes something imminent. Imagine if every time a parent who gets mad at their teenage son or daughter says, if you ever come home late again, I'll kill you. Is that an assault? No, of course it's not. It's just describing, it's an expression of anger, and there's no doubt Mr. VanHoose was angry, but it doesn't describe anything remotely like an imminent threat. And as a matter of fact, as I pointed out in the reply brief, the words that were used, I will kill you, or I'm going to kill you, are an exact match for the words used in the 4th District case, People v. Kettler, where there were also two witnesses who allegedly said the same thing, and the 4th District reached the correct result in that case, said, no, that's not an assault, because it is talking about some indefinite future event. It's not something that describes an imminent battery. It is black letter law that words alone are insufficient to convict someone for an assault. There has to be the conduct, and it has to be a threat of an imminent battery that simply was not present in this case. You know, the burning question here is where was the conduct? There simply wasn't any. And it's also telling that in the court's oral judgment describing, the court never mentions conduct. It only says, well, it found the threats to be credible. Well, maybe it did, but that's not enough. By the very fact that the trial court never even mentioned the element of conduct, this is a further indication that there were insufficient facts to support this conviction for assault. Your Honors, if there's no further question, I just want to very briefly touch on the second issue. Again, I don't think it will be necessary to reach it. But the gist of the second issue here is simply that the court never advised Mr. Van Hoose that he had a right to counsel if indigent. Now, there was a point where he requested the assistance of the public defender, but there was nothing in the record that says he was ever advised he had a right to the assistance of a public defender. And he was never properly admonished either before the trial or between the judgment and the post-trial proceedings when he, after his hired counsel, did withdraw. And there were indications in the record that Mr. Van Hoose had some financial concerns such that he might not be able to afford his own attorney. And apparently what happened that he was able to afford an attorney for the trial, but for whatever reason, he decided to represent himself in the post-trial proceedings. And yet the court, again, never admonished him, hey, you have a right to appointed counsel if you want to have appointed counsel. So, again, I don't think we need to reach that issue. But if this court does find it necessary to reach that issue, then I believe that we succeed on the merits in that as well. Thank you, your honors. I'll save the rest of my comments for rebuttal. Thank you, counsel. Mr. Dale, you may proceed. Thank you, your honors. Good morning. May it please the court, counsel. For the record, my name is Patrick Daly. I am here on behalf of the people of the state of Illinois. I'm going to jump right to Justice Moore's question regarding the impact of court supervision. And I understand this to be a question regarding whether we have a moot in this issue here. It's an interesting question when you think about the dynamics of supervision and it operates as or should or can operate as a dismissal of the charge. There are a couple factors I think that probably should be taken into consideration. Number one, and maybe this kind of overlaps a little bit with what Mr. Whitney was talking about. Although the judgment of supervision does have that kind of non-conviction effect to it, it's still nonetheless a judgment. Think of it in terms perhaps in relative to DUIs where a prior supervision can be used in DUI to aggravate a subsequent DUI for later violations of that offense, which can actually elevate the offense on the third DUI to a felony even if the first was a court supervision. So the judgment of supervision being as it is does have some effect that I think is distinguishable from an outright acquittal. So I agree with counsel in that regard. Secondarily, I would have to probably verify this fact. I don't know for sure, but I do believe that the rules are somewhat different with regards to supervision versus acquittals with regards to how the process works for expungements later on down the road. So I do think that this is, I would submit and agree with Mr. Whitney, this is not a moot case. It's viable for judgment on those bases as well. So when we, this is an assault violation. It's a Class C misdemeanor. As a court will see from the record, contextually, this began as a threatening a public official felony offense in the court found defendant guilty of the lesser included offense of assault. The defendant doesn't discuss it here at oral argument, but I do want to just briefly mention that in the briefs, they submit that this court standard review should be de novo on the basis that it appears that the evidence would be or could be considered largely uncontested. I would submit though that the appropriate standard of review is that which is typically associated with challenges to the sufficiency of evidence and that is deferential to the trier of facts, fact findings below. Here we have a, it was a contested trial. There was no stipulation of evidence. We have a vigorous cross examination of the state's witnesses, as you'll see from the record. And I think maybe critically, most of all, that the court's finding of assault is contingent upon an accumulation of the facts and consideration of the context of all the facts together, which would support inferentially the both the eminence and the reasonable apprehension of receiving a battery, which is necessary for an assault charge. You know, this didn't come to the court as an assault charge. So no one said outright, well, I thought he was about to hit me. So much of the much of the court's fact finding here really relates to the totality of the circumstances and whether the reasonable person in Leonard Black's shoes would be in reasonable fear of receiving a battery. So therefore, I'd ask this court to maintain the typical standard of review. And that is that reversal is warranted only where the evidence is so improbable or unsatisfactory or unreasonable that it justifies reasonable doubt. Counsel, what what about the victim's testimony that he was at a safe distance? I guess that came up in perhaps maybe an order of protection case as well. I think, yes, that's right. I think he that was through cross-examination. I think he conceded he had made that statement at a prior time to two answers to that. Number one, there is some discussion in the record about the 10 to 15 feet distance. Now, that was stated in terms of where the defendant was yelling and screaming and going on. If the court looks at the facts here, it really happened in sort of a continuum from when Black first appears, was walking up the incline to the restaurant. The defendant approaches them towards a retaining wall. He's walking up, was yelling and screaming at him, had gone back and had come roaring up to the on his motorcycle up alongside him. I believe it's Black's testimony. But the second part of that answer, Justice Overstreet, is that we are talking about the reasonable person standard, not necessarily the subjective standard. So, again, although I'm not saying that that is something that's immaterial, overtly immaterial, I do think that has to be taken with a gigantic grain of salt because we are talking about a evaluation of the facts as a reasonable person might perceive them. And I do think that Black's testimony at trial, be that as it was, certainly at least placed in his personal subjective belief that he was afraid of the defendant. Again, he did not say I didn't think he's about to hit me or anything necessarily, but he did. He did indicate some apprehension. He did indicate, I believe, Romanek's testimony was that when the defendant had initially approached him, he started veer away from him. So, clearly, the aggressiveness of the defendant's actions did have an impact, an effect on Black's perception of the events. And, again, we're talking about really, well, defendant's principal thesis is that we're a situation that the criminality is based principally upon verbal threats that are being leveled against Black. And it is true that assault requires, along with any kind of verbal or verbal is going to constitute some basis for the offense, some accompanying action. We're not talking about a situation here, though, which was essentially, you know, the defendant standing off in a distance and hurling epithets at Black. We are talking about an instance where, from the outset, defendant had approached Black, was using vulgarities, had come up to him. Now, I realize that they are divided by a retaining wall. I don't know what that retaining wall looks like or to what degree it was even really described in the record. But, certainly, they were in a position that they were kind of, you know, in view of each other. It wasn't something like he was behind a wall altogether and he's kind of shouting words over the top of it. He had then, after that had been completed, gone back and gotten a motorcycle, had pulled up. And I believe he said he pulled up alongside. That was Black's testimony. So, again, the record does not state the precise proximity of that particular occurrence. But he said he did pull up alongside him and then, at that point, told him that he was going to kill him or I'm going to kill you or I'll kill you, something along those lines. So, what we have here, then, is just simply just the use of words. But here we have this defendant approaching the victim. He's yelling and screaming. He's making threats. He approaches this location in an aggressive manner, then retreats, gets on his motorcycle, again approaches the victim, again hurls threats at him. In a way that I think, from a subjectively speaking, objectively speaking, perhaps, you know, an elderly gentleman like Mr. Black being confronted with this type of behavior would find it to be of a nature that might constitute a potential battery. Let me ask you a question real quick. Yes, Your Honor. And if I recall correctly from reading, there'd been a history of, you know, not necessarily threats, but just some confrontation. There's just been a history between the victim and Black and everybody involved, correct? Correct. You beat me to the punch, Your Honor. I was about to mention that on top of all that, you'll see, and there's extensive discussion about the longstanding history and animosity between Black defendant and a third individual named Romanik. I think it's a principle between Romanik and defendant, but Black's association with Romanik, I think, was one of those aggravating circumstances. And I think that when defendants saw Black and Romanik there together at the time of the motorcycle event, that's what really, I think, triggered that secondary action of going up there. Because I believe, according to the witnesses, that he threatened both of them when he pulled his motorcycle up there. So, again, this is, it's a pretty straightforward case as far as the facts are concerned. It's just a matter of whether this court agrees, as apparently the trial court did in hearing the testimony and hearing the witnesses and taking the threat in the context of what happened, that Black had been placed in a reasonable apprehension of receiving a battery. I'm not going to have time to get to the second issue. I think that I've laid out my position clearly there with regards to whether plain error occurred and whether defendant had been appropriately been made aware, was aware of his right to an attorney. I do look closely in my last 15 seconds here at that part of the record where there was clearly been an indication or discussion about defendant's request for a public offender that had been made before they went on the record and the events ensued after that. Because I do think that that's important, ultimately, to the decision about whether the defendant had knowledge of that part of the rule. Thank you, Your Honors. Thank you, Mr. Daly. Mr. Whitten, rebuttal. Yes.  First of all, with respect to the issue raised by Justice Moore, I did recall researching whether there was a mootness issue. I could find no authority for the proposition that simply because a court supervision was completed, that that made the disposition moot or the judgment moot. So for what it's worth, that's why I proceeded to file the brief. I don't believe that there is any such authority unless something has happened in the last couple of years. With regard to the standard of review, I don't think we really have a disagreement on that issue, Your Honor. As I addressed in the reply brief, our Supreme Court in the Brown case basically said that the standard for deciding whether there was insufficient evidence is the standard of review. Under any standard of review, the evidence was insufficient here. While I'm happy to accept the State's concession that its own chief witness was not a reasonable person, the fact of the matter is that Mr. Black was not simply expressing a subjective view. On page 46 of the record, he was asked, question, he never came very close to you, though, did he? Answer, probably when he was yelling and screaming, we were not real close, a distance of 15 feet, maybe 20 feet. That was the chief victim's own words, and he never said anything to contradict him, saying that he ever came closer. So when counsel says, well, he approached him, even that's not really in the record. Mr. Black's testimony was that he was walking alongside, but still maintaining a distance of not 10 to 15, 15 to 20 feet. There was no evidence that he came roaring up, the word was flying, and again, one of the witnesses said he was walking his motorcycle. So I guess he was walking it up the hill very fast, is the only conclusion we can draw from that, or one or both of the chief witnesses for the State were not telling the truth. Regardless of that, we simply don't get there. There is absolutely no evidence of any conduct evincing an imminent threat of battery. There was nothing to contradict the testimony that during this entire interchange, Mr. Van Hoose stayed 15 to 20 feet away. And accordingly, there is a complete failure of evidence in this, again, this is that rare case where I believe a judgment of acquittal absolutely has to be entered in this matter. If there's no further questions, I believe that we can complete our argument. Thank you, counsel. The court will take the matter under advisement and issue its decision in due course. Thank you. Thank you, your honors.